Joseph Daniel Flynn v. Commissioner.
Flynn v. Commissioner
Docket No. 57180.
United States Tax Court
T.C. Memo 1957-179; 1957 Tax Ct. Memo LEXIS 74; 16 T.C.M. (CCH) 800; T.C.M. (RIA) 57179; September 23, 1957
*74 Deduction of business bad debt not approved where the proof in the case fails to establish the worthlessness of the debt in the taxable year. Joseph Daniel Flynn, 422 Lee Street, Oakland, Calif., pro se. Nat F. Richardson, Esq., for the respondent. VAN FOSSAN Memorandum Opinion VAN FOSSAN, Judge: Respondent determined a deficiency of $1,791.79 in petitioner's income tax for 1953 consequent on the disallowance of a deduction for a bad debt, with interest, amounting to $28,591.70. The alleged bad debt arose from a transaction in which in 1952 petitioner loaned $25,590 to a corporation in which he owned 85 per cent of the stock. The corporation in March 1953 merged with another corporation, and petitioner, as a party to the merger agreement, forgave the merged corporation such sum of $25,590 and interest, then outstanding as a loan. Petitioner's tax return, claiming the deduction as a business bad debt, was filed with the district director of internal revenue at San Francisco, California. [Findings of Fact] On October 8, 1951, petitioner Flynn organized the Alco Rubber Manufacturing Company (hereinafter referred to as Alco) under the laws of California, *75 with $75,000 of issued capital stock, all subscribed and paid for by Flynn $1 per share. Subsequently Flynn sold 15 per cent of the stock to another party, leaving himself as the owner of 85 per cent of the stock in Alco at all times material. Early in 1952 Alco required additional financing and, under date of April 30, 1952, Flynn loaned Alco $25,590, taking in return a note providing for interest at 6 per cent, such note being secured by a mortgage on the Alco plant and equipment. Petitioner also borrowed $19,052.47 from a bank, secured by a deed of trust, and $10,000 from the same bank unsecured. Late in 1952 it became apparent to Flynn that Alco was not being successful. He made attempts to sell the entire company but without success. On February 17, 1953, Flynn and Goodyear Rubber Company [1] entered into an agreement providing for the merging of Alco into Goodyear. The agreement provided that Goodyear was to be the sole surviving company and should acquire all the assets and liabilities of Alco excepting as provided in the agreement. Goodyear was to reduce its capital stock value from $100 per share to $25 per share and issue to the stockholders of Alco 1,333 shares out of *76 a total of 5,333. Flynn warranted "* * * that the balance sheet of Alco is true and correct and truly represents the condition of the company as of December 31, 1952, and that there has been no material change in the assets or liabilities of the company from that set forth on said balance sheet, and that there have been no material liabilities actual, contingent or accrued which are not reflected in such balance sheet." The agreement contains a provision that Flynn agreed to the release and discharge of all obligations of Alco to himself as shown in the balance sheet of December 31, 1952, which balance sheet Flynn had warranted to be true and correct.the balance sheet shows Alco to have total assets of $117,715.88 and liabilities of $76,306.11, leaving net assets of $41,409.77 at the time of the merger. According to the merger agreement and the balance sheet as of the basic date Alco was solvent and had asset values sufficient to have paid petitioner in full had he elected to enforce collection of the debt from Alco, such debt being secured by a mortgage on Alco's *77 plant. See O'Bryan Bros., Inc. v. Commissioner, 127 Fed. (2d) 645; Leo Perlman, 27 T.C. 755. [Opinion] Although petitioner organized several companies in the period 1949 to 1951, there is no evidence that he loaned any money to any of these companies excepting the loan of $25,590 to Alco. Petitioner has not proved that in 1952 he was engaged in the business of lending money to corporations. See F. Sitterding, Jr., 20 T.C. 130; Dominick J. Salomone, 27 T.C. 663. In March 1953, at the time petitioner cancelled the note for $25,590 and interest due from Alco, he received 1,333 shares of the new stock of Goodyear in exchange for the 75,000 shares of Alco. Petitioner, describing himself as a "capitalist" in the merger agreement, has, by his own pronouncement in such agreement, foreclosed himself of the right to declare Alco to have been insolvent at the basic date. He may not, as a "capitalist", be heard to declare the balance sheet to be true and correct and then as a taxpayer declare the exact contrary. Which character are we to believe? At the least, the two utterly inconsistent positions taken by petitioner demonstrate the *78 unreliability of his testimony and destroy and credence therein. Petitioner admits on brief that the balance sheet on its face shows that Alco had net assets of $41,409.77. He contends, however, that "when full consideration is given to the testimony, facts and evidence" insolvency is apparent. We cannot agree. We hold that petitioner has not demonstrated by credible evidence that the debt became worthless in 1953. Moreover, petitioner became a stockholder in Goodyear, receiving 1,333 shares of stock, and also became an officer of that company, receiving a salary in the taxable year of $8,925. The consequence is that petitioner, in forgiving the debt, probably bettered his position as a stockholder and officer in Goodyear. Leo Perlman, supra. In view of the above holding as to the solvency or insolvency of Alco, it is not necessary to consider respondent's alternative contention, i.e., that the worthless debt, if any be proved, was deductible only as a nonbusiness bad debt under section 23(k)(4), Internal Revenue Code of 1939. Decision will be entered under Rule 50. Footnotes
1. A small local company in California, not connected with Goodyear Tire and Rubber Company, of Akron, Ohio.↩